IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

BRENTON CLAXTON,              )
                             )
            Plaintiff,        )
                             )
      v.                      )  Case No.
                             )  08-3329-CV-S-REL-SSA
MICHAEL J. ASTRUE, Commissioner )
of Social Security,           )
                             )
            Defendant.        )

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Brenton Claxton seeks review of the final decision
of the Commissioner of Social Security partially denying
plaintiff's application for disability benefits under Titles II
and XVI of the Social Security Act ("the Act"). Plaintiff argues
that the ALJ erred in interpreting the expert medical opinion of
Dr. Michael Ball, and the ALJ erred in failing to give greater
weight to plaintiff's testimony. I find that the substantial
evidence in the record as a whole supports the ALJ's finding that
plaintiff was not disabled prior to July 28, 2005. Therefore,
plaintiff's motion for summary judgment will be denied and the
decision of the Commissioner will be affirmed.

## I.    BACKGROUND

On September 6, 2005, plaintiff applied for disability
benefits alleging that he had been disabled since February 1,
2000, amended to September 6, 2004. Plaintiff's application was
denied on November 19, 2006. On December 13, 2007, a hearing was

held before an Administrative Law Judge.  On February 11, 2008,
the ALJ found that plaintiff was disabled as of July 28, 2005,
but not before.  On July 9, 2008, the Appeals Council denied
plaintiff's request for review.  Therefore, the decision of the
ALJ stands as the final decision of the Commissioner.

## II.  *STANDARD FOR JUDICIAL REVIEW*

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for
judicial review of a "final decision" of the Commissioner.  The
standard for judicial review by the federal district court is
whether the decision of the Commissioner was supported by
substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales,
402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847,
850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th
Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir.
1996).  The determination of whether the Commissioner's decision
is supported by substantial evidence requires review of the
entire record, considering the evidence in support of and in
opposition to the Commissioner's decision.  Universal Camera
Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876
F.2d 666, 669 (8th Cir. 1989).  "The Court must also take into
consideration the weight of the evidence in the record and apply
a balancing test to evidence which is contradictory."  Wilcutts

2

v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

### III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving he is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857

3

(8th Cir. 2000); <u>Brock v. Apfel</u>, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, <u>et seq.</u> The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1.   Is the claimant performing substantial gainful activity?

Yes = not disabled.
No = go to next step.

2.   Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

No = not disabled.
Yes = go to next step.

3.   Does the impairment meet or equal a listed impairment in Appendix 1?

Yes = disabled.
No = go to next step.

4.   Does the impairment prevent the claimant from doing past relevant work?

No = not disabled.
Yes =  go to next step where burden shifts to Commissioner.

4

5.  Does the impairment prevent the claimant from doing any other work?

> Yes = disabled.
> No = not disabled.

## IV.  *THE RECORD*

The record consists of the testimony of plaintiff; his girl friend, Tracy Anne Metz; and vocational expert Dr. Cathy Hodgson, in addition to documentary evidence admitted at the hearing.

## A.  *ADMINISTRATIVE REPORTS*

The record contains the following administrative reports:

## Earnings Record

The record shows that plaintiff earned the following income from 1966 through 2007:

| Year | Income | Year | Income |
|------|--------|------|--------|
| 1966 | $    312.50 | 1987 | $22,105.00 |
| 1967 | 575.00 | 1988 | 3,612.00 |
| 1968 | 2,328.11 | 1989 | 8,367.00 |
| 1969 | 4,736.51 | 1990 | 18,876.00 |
| 1970 | 3,554.33 | 1991 | 0.00 |
| 1971 | 4,084.25 | 1992 | 861.76 |
| 1972 | 2,985.00 | 1993 | 9,611.17 |
| 1973 | 5,410.00 | 1994 | 22,548.69 |
| 1974 | 6,345.00 | 1995 | 19,469.19 |
| 1975 | 7,025.00 | 1996 | 20,254.81 |
| 1976 | 6,020.30 | 1997 | 28,405.45 |
| 1977 | 11,348.45 | 1998 | 32,057.59 |

Case 6:08-cv-03329-REL   Document 17   Filed 09/29/09   Page 5 of 29

| 1978 | 10,800.00 | 1999 | 16,095.53 |
|------|-----------|------|-----------|
| 1979 | 4,800.00 | 2000 | 84.32 |
| 1980 | 11,600.00 | 2001 | 0.00 |
| 1981 | 16,000.00 | 2002 | 0.00 |
| 1982 | 16,600.00 | 2003 | 0.00 |
| 1983 | 12,300.00 | 2004 | 0.00 |
| 1984 | 5,200.00 | 2005 | 0.00 |
| 1985 | 2,386.00 | 2006 | 0.00 |
| 1986 | 7,769.00 | 2007 | 0.00 |

(Tr. at 57).

**Disability Report**

In a Disability Report dated June 5, 2007, plaintiff reported that he cannot sit, stand, or walk for very long, and that the only time he gets relief from his pain is when he lies down (Tr. at 68).

**B.  *SUMMARY OF MEDICAL RECORDS***

On September 24, 2003, plaintiff was seen at the VA hospital (Tr. at 163-164, 168-169, 352-358).  "He states he is doing fine. He denies any complaints.  He has no complaints of any abdominal pain.  His back pain has been stable.  He did not get his x-rays at last visit.  He still smokes."  Plaintiff said he had no pain and no feelings of depression or hopelessness.  After a physical exam, he was assessed with gastroesophageal reflux disease ("GERD") syndrome, stable.  His global assessment of functioning

6

was 90.[1]  He was advised of the benefits of regular exercise.  He had lab work done and was told to come back in six months.

On June 17, 2004, plaintiff was seen at the VA hospital (Tr. at 157-162, 346-351).  "Auto mechanic.  He is here.  He smokes. He complains of pain in the low back.  It has been going on for a couple of weeks."  Plaintiff described his pain as a 10 out of 10.  The pain had gotten worse on the left side of his body, and plaintiff said it hurt in his neck down to his leg.  He had been experiencing the pain for less than one month, and the pain was aggravated by moving.  On exam, flexion of the lumbar spine was limited.  Straight leg raising was limited to 50 degrees.  He was assessed with low back pain, probably musculoskeletal spasm, lumbago.[2]  Plaintiff was advised to "give rest to the back".  The provider talked to plaintiff about applying heat and cold, using distraction and relaxation, or massage therapy.  He was told to try cyclobenzaprine (muscle relaxer) and Ultram (narcotic-like pain reliever) and return in four to six weeks if his symptoms were not better.  Plaintiff declined the opportunity to discuss his smoking status and "declined smoking cessation at this time."

---

[1]A Global Assessment of Functioning of 81 to 90 means absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).

[2] Lumbago is an umbrella term for general lower back pain.

7

September 6, 2004, is plaintiff's alleged onset date.

On November 3, 2004, plaintiff was seen at the VA hospital (Tr. at 152-157, 341-346). "The patient is here for followup visit. Apparently, he had an appointment in March; I am not sure why he is here. He has a chronic low back pain. He is feeling much better. He has taken occasional medi[c]ations for GERD syndrome. He still smokes. He wants to smoking [sic]. He will get nicotine patch." On exam plaintiff was alert and in no acute distress. He reported no pain on this visit (0 out of 10). He reported no feelings of depression or hopelessness. He had not been bothered by lack of interest or loss of pleasure in doing things. He was assessed with nicotine use and chronic low back pain. Plaintiff was counseled on aerobic, flexibility and endurance exercises and the importance of regular exercise. He was told to stop smoking.

December 31, 2004, is plaintiff's last insured date.

On March 28, 2005, plaintiff was seen at the VA hospital (Tr. at 147-152, 335-340). "[K]nown history of gastroesophageal reflux disease, has some increasing aches and pains, may be getting in to fibromyalgia, he is also getting depressed. His business is not doing well." Plaintiff described his pain as a 4 out of 10, constant, aggravated by nothing, and had been present for more than a year. He complained of being lethargic with

generalized muscle aches.  An exam was performed.  Plaintiff was assessed with depression, chronic nicotine use, and GERD.  He was told to stop smoking, try metoclopramide (treats heartburn), use amitriptyline (an antidepressant) at bedtime, have a psychiatry evaluation, and return in a month if his symptoms were not better.

On April 19, 2005, plaintiff was scheduled to see a psychiatrist with the VA hospital but failed to show for the appointment (Tr. at 218, 289).

On August 16, 2005, plaintiff was seen at the VA hospital complaining of back pain "for last 2 months" (Tr. at 146, 329, 332-333).  "He had low back pain before, but it looks like he is working on the car, now it's worse.  He has more pain in the left sacroiliac area.  He states that sometimes it radiates down the leg in the front up to the knee. . . .  He states that sometimes the pain is bad, especially when he walks around.  No pain at night."  He rated his pain a 3 out of 10 and said it gets worse if he sits in the wrong position.  Plaintiff reported having one to two drinks two to three times per week.  He was encouraged to quit smoking.  He was observed to have a normal gait.  Straight leg raising was limited to 60 degrees.  Flexion of the spine was limited to 60 degrees.  He had some decreased pinprick sensation over the L3 and L4 on the left side.  X-rays of the lumbosacral

spine were ordered, and plaintiff was given information about
back exercises.  He was assessed with low back pain, rule out
radiculopathy.

On August 19, 2005, plaintiff had x-rays of his lumbosacral
spine (Tr. at 205, 266).  The impression was early degenerative
arthritis and slight scoliosis (curvature of the spine).

On September 28, 2005, plaintiff was seen at the VA Hospital
complaining of knee and back pain (Tr. at 139-140, 327).  He
described his pain as a 4 out of 10.  He was observed to have a
normal gait.  Plaintiff was encouraged to quit smoking.

On September 30, 2005, plaintiff was seen at the VA hospital
for lab work (Tr. at 323).

On November 8, 2005, Lester Bland, Psy.D., completed a
psychiatric review technique (Tr. at 223-236).  Dr. Bland found
that plaintiff's mental impairment, caused by depression and
history of alcohol abuse, was not severe.  He found that
plaintiff suffered from no restriction of activities of daily
living; no difficulties in maintaining social functioning; mild
difficulties in maintaining concentration, persistence, or pace;
and had no episodes of decompensation.

In support, Dr. Bland noted that plaintiff had not alleged
disability based on a mental impairment, he was self-sufficient
in personal care, did not need reminders, prepared meals, left

10

home several times per day, drove, shopped, managed finances,
watched television, read, visited with others, got along with
others, and followed instructions.  He noted that the medical
records show that plaintiff had a history of alcohol abuse and
did not want to quit.  He had a negative depression screen in
2002 along with continued alcohol abuse.  His GAF in April 2003
was 90.  The first note of depression was in March 2005.  He was
assessed with depression in August 2005 although he had no
complaints of symptoms.

On December 13, 2005, plaintiff had x-rays of his right
elbow to rule out fracture or dislocation (Tr. at 265).  There
was no evidence of acute bony change.  He was assessed with soft
tissue swelling.

On May 4, 2006, plaintiff was seen at the VA hospital
complaining of a history of black outs (Tr. at 311-315).  He
reported that the day before he had been making coffee, felt
flushed, and then woke up on the floor.  The same thing happened
three months earlier.  He reported his pain a 3 out of 10.  "He
was seen in last December with complaint of blackout momentarily.
Nobody did witness this.  Also, he says that he has had blackouts
before 3 months.  He did not take any medical care for that one.
He says it was just for a second and he did not know what
happened.  The patient is a chronic smoker and will refer to

smoking cessation program.  Also, he says he takes two to three drinks [per week] and he was advised not to take any."

Plaintiff was referred to behavioral health for assistance with smoking cessation (Tr. at 288).  The doctor also ordered a CT of plaintiff's brain.

On May 5, 2006, Carolyn Hampleman from the VA hospital was unable to reach plaintiff regarding his smoking cessation consult (Tr. at 288, 310).  She left a message on his voice mail informing him of the smoking cessation tele-health program, individual counseling, and nicotine patches.  She also mailed the same information to plaintiff.

On May 25, 2006, plaintiff had a CT scan of his head due to complaints of blackouts (Tr. at 263-264).  The result was normal.

On November 20, 2006, plaintiff was seen at the VA hospital complaining of knee and back pain (Tr. at 304-309).  Plaintiff was alert, oriented, ambulatory, and in no distress.  Range of motion of both knees was within normal limits.  An alcohol screening test was positive as he reported consuming one to two drinks at a time four or more times per week.  Plaintiff rated his pain a 3 out of 10.  He was assessed with history of GERD, chronic degenerative joint disease, and chronic back pain.  His medications were renewed.  The doctor ordered x-rays of both knees and told plaintiff to come back in six months.

12

On November 24, 2006, plaintiff had x-rays of his knees (Tr. at 262-263). He was assessed with early degenerative arthritis.

That same day, plaintiff was seen at the VA hospital for complaints of syncope, or near fainting (Tr. at 287, 301-302). Plaintiff reported smoking 1/2 pack of cigarettes per day and declined counseling on smoking cessation. He was given a Holter monitor and told to return in three days for an EEG.

On November 29, 2006, Ankineedu Kavuri, M.D., reviewed plaintiff's Holter monitor and determined that he had sinus rhythm, sinus tachycardia, and otherwise normal tracing (Tr. at 287).

On December 6, 2006, plaintiff was seen at the VA hospital to get the results of his EEG (Tr. at 295-300). "Otherwise, he is not offering any new complaint. . . . His 24-hour Holter monitor reported sinus tachycardia, otherwise, normal Holter monitor. I do not have an EEG report, but patient says he was told that the EEG was good." Plaintiff reported having no pain. He was observed with a normal gait. Plaintiff was assessed with history of GERD, chronic back pain, and degenerative joint disease. Plaintiff was told to stop taking his cyclobenzaprine and to return as needed.

About a half an hour later, according to the records, he was seen at the VA hospital for a follow up on chronic back pain,

13

degenerative joint disease, and soft tissue injury to his elbow (Tr. at 317-318, 320-323). Plaintiff reported no pain in his elbows. His other pain was rated a 3 out of 10. The doctor noted soft tissue swelling but without tenderness. He ordered an x-ray of plaintiff's right elbow. Plaintiff was advised that his triglycerides were high and that he should exercise. He was told to stop smoking and was given information on smoking cessation classes. He was told to follow up in six months.

On December 7, 2007, plaintiff saw Michael Ball, D.O., for back pain and generalized joint pain (Tr. at 393). "He is unable to sit for any extended period of time greater than 30 minutes duration due to the pain he experiences in his low back. The pain also radiates into both lower extremities and at times he has numbness and tingling in the feet bilaterally. The patient complains of chronic neck pain and has limited motion in the cervical spine. He has had x-rays in the past [which] revealed degenerative joint and disk disease of his neck and low back. The patient also has pain in his hips and knees with any extended standing greater than 30 minutes duration. The patient also complains of pain in his left elbow and inability to fully extend the left upper extremity. He has weakness in his left arm and frequents [sic] drops items from the left hand."

14

On exam Dr. Ball observed that plaintiff's gait was normal, he was alert and oriented and responded appropriately, he was unable to heel and toe walk, he had limited forward bending of the lumbar spine at 30 degrees and side bending right and left at five degrees. He was unable to squat, he had paravertebral muscle spasm throughout the entire lumbar spine, he had decreased strength in his lower extremities, he had decreased range of motion in all planes of movement of the cervical spine, decreased grip strength in his left upper extremity, reduced range of motion in the hip joints bilaterally, and crepitus [grinding sound] on passive range of motion in the knee joints bilaterally. Dr. Ball assessed generalized degenerative joint disease, hypertension, and acid reflux disease.

That same day, Dr. Ball completed an Evaluation of Functional Capacity (Tr. at 395-396). He found that plaintiff could lift 25 pounds occasionally and ten pounds frequently, could stand for three hours per day, could sit for three hours per day, could alternate sitting and standing for a total of four hours per day, would be moderately limited in his ability to concentrate due to pain, had a moderate limitation in handing, had a mild limitation in fingering or feeling, had a moderate limitation in reaching, had a substantial limitation in climbing,

Case 6:08-cv-03329-REL   Document 17   Filed 09/29/09   Page 15 of 29

stooping, kneeling, crouching, and bending, and had various environmental restrictions.

**C.** **_SUMMARY OF TESTIMONY_**

During the December 13, 2007, hearing, plaintiff testified; his girl friend testified; and Dr. Cathy Hodgson, a vocational expert, testified at the request of the ALJ.

**1.** **Plaintiff's testimony.**

Plaintiff lives in a house on one acre of land (Tr. at 423). He occasionally hires people to mow and weed his yard (Tr. at 423). He lives alone (Tr. at 435). His daughters come to his house and help him with household chores (Tr. at 435). Plaintiff does some of his own laundry (Tr. at 435). Plaintiff can barely go up and down stairs, although his house is full of stairs (Tr. at 435-436, 437, 438). His elbows hurt when he tries to lift anything, and he loses his grip on things (Tr. at 436). Plaintiff can occasionally lift five to ten pounds, although just moving his arms causes pain (Tr. at 436). Plaintiff can sometimes hold onto work tools, but sometimes he just drops them (Tr. at 437). It had not happened very much lately, however (Tr. at 437). If he kneels down, plaintiff cannot get back up without rolling over, and he can hardly squat (Tr. at 437). Whenever he is standing, he is in pain (Tr. at 438). He can walk about 200 to 300 feet (Tr. at 439).

Case 6:08-cv-03329-REL   Document 17   Filed 09/29/09   Page 16 of 29

Back in 2002, a doctor noted that plaintiff was drinking five to six beers a day; however, plaintiff said that was incorrect, that he was drinking one to two beers per day (Tr. at 425). In April 2003 and in March 2005, Dr. Reddy noted that plaintiff was an auto mechanic and that business was not going all that well (Tr. at 425-426). He performed small tune ups, brakes, etc., in his home garage (Tr. at 426). He jacked up the car and sat on a stool with wheels, or he would bend over the engine to do things such as changing spark plugs (Tr. at 426).

Plaintiff previously experienced seizures, but his doctor took him off a certain medication and he has not had any since (Tr. at 439). His last seizure was on May 25, 2006 (Tr. at 440).

Plaintiff was unable to work as of September 6, 2004, because at that time he would try to do something, hurt himself, and then lie around for two to three weeks recuperating (Tr. at 427). Plaintiff's main complaint is his lower back pain (Tr. at 433). The pain is present all the time (Tr. at 433). Plaintiff takes medicine almost every day (Tr. at 434). It helps some but does not cure the pain (Tr. at 434). Plaintiff sleeps on the couch for two to three hours before he wakes up in pain (Tr. at 434). Because he does not sleep much at night, he has to take two naps during the day, each lasting two to three hours (Tr. at 434-435).

17

Plaintiff drove for an hour and a half without stopping to get to the administrative hearing (Tr. at 423).

Plaintiff's medications cause dry mouth, nervousness, and irritability (Tr. at 427).

**2.   Testimony of plaintiff's girl friend.**

At the time of the hearing, Ms. Claxton had known plaintiff for about eight months (Tr. at 441).  Plaintiff cannot help her with firewood, cannot help her fix her cars, and when she met him his home was a mess (Tr. at 441).  Ms. Claxton helps plaintiff with his household chores (Tr. at 441).  His parents and brother also help him (Tr. at 441-442).

3.   **Vocational expert testimony.**

Vocational expert Dr. Cathy Hodgson testified at the request of the Administrative Law Judge.  Plaintiff's past relevant work includes milk tanker driver performed at the medium exertional level (as described in plaintiff's written administrative materials) or the light level (as described during plaintiff's testimony), and a delivery driver, performed at the heavy exertional level but traditionally considered a medium semi-skilled position (Tr. at 44).

The first hypothetical incorporated the limitations as found by Dr. Ball, i.e., can lift 25 pounds occasionally and ten pounds frequently; stand for three hours per day, sit for three hours

18

per day; would have difficulty with bilateral use of the hands;
moderate limitation in handling, reaching, pushing, and pulling;
mild limitation in fingering, feeling, and balancing; substantial
limitation in climbing, stooping, kneeling, crouching, bending;
should avoid concentrated exposure to humidity; and should avoid
all exposure to hazards, machinery, and heights (Tr. at 444-445).
The vocational expert testified that such a person could not do
any of plaintiff's past relevant work or any other work (Tr. at
445-446).

**V.    FINDINGS OF THE ALJ**

Administrative Law Judge L. W. Henry entered his opinion on
February 11, 2008 (Tr. at 13-22).

Step one.  Plaintiff has not engaged in substantial gainful
activity since his alleged onset date (Tr. at 15).  He worked as
a self-employed auto mechanic, but he did not report substantial
income.

Step two.  Plaintiff has the following severe impairments:
gastroesophageal reflux disease and, since August 19, 2005, early
degenerative joint disease of the lumbosacral spine (Tr. at 15).
Plaintiff's early degenerative arthritis of his knees is non-
severe as are his depression and alcoholism (Tr. at 16).

Step three.  Plaintiff's impairments do not meet or equal a
listed impairment (Tr. at 17).

Step four.  Plaintiff has the residual functional capacity to perform the full range of light work (Tr. at 18).  Plaintiff is unable to perform his past relevant work (Tr. at 20).

Step five.  Prior to July 28, 2005, there were a significant number of jobs in the national economy that plaintiff could have performed (Tr. at 20-21).  Beginning on July 28, 2005, plaintiff's age category changed and, by direct application of Medical-Vocational Rule 202.06,[3] defendant became disabled on this date (Tr. at 21).  Plaintiff was not under a disability at any time through December 31, 2004, the date last insured (Tr. at 21).

## VI.  CREDIBILITY OF PLAINTIFF

Plaintiff argues that the ALJ erred in finding that plaintiff's testimony was not credible.

## A.  CONSIDERATION OF RELEVANT FACTORS

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts.  Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988);  Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  If there are inconsistencies in the record as a whole, the ALJ may discount subjective

---

[3]Where the maximum sustained work capability is light work and the claimant is 55 years of age or over with a high school education and no transferrable skills, the person is considered disabled. Appendix 2 to Subpart P of Part 404, Medical-Vocational Guidelines.

20

complaints.  Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999);

McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993).  The ALJ,

however, must make express credibility determinations and set

forth the inconsistencies which led to his or her conclusions.

Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v.

Sullivan, 956 F.2d 836, 839 (8th Cir. 1992).  If an ALJ

explicitly discredits testimony and gives legally sufficient

reasons for doing so, the court will defer to the ALJ's judgment

unless it is not supported by substantial evidence on the record

as a whole.  Robinson v. Sullivan, 956 F.2d at 841.

In this case, I find that the ALJ's decision to discredit

plaintiff's subjective complaints is supported by substantial

evidence.  Subjective complaints may not be evaluated solely on

the basis of objective medical evidence or personal observations

by the ALJ.  In determining credibility, consideration must be

given to all relevant factors, including plaintiff's prior work

record and observations by third parties and treating and

examining physicians relating to such matters as plaintiff's

daily activities; the duration, frequency, and intensity of the

symptoms; precipitating and aggravating factors; dosage,

effectiveness, and side effects of medication; and functional

restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.

1984).  Social Security Ruling 96-7p encompasses the same factors

as those enumerated in the <u>Polaski</u> opinion, and additionally
states that the following factors should be considered:
Treatment, other than medication, the individual receives or has
received for relief of pain or other symptoms; and any measures
other than treatment the individual uses or has used to relieve
pain or other symptoms (e.g., lying flat on his or her back,
standing for 15 to 20 minutes every hour, or sleeping on a
board).

The specific reasons listed by the ALJ for discrediting
plaintiff's subjective complaints of disability are as follows:

> The clinical and objective findings herein are inconsistent
> with allegations of total debilitation. The claimant
> was diagnosed with degenerative joint disease as early as 2002,
> but reported that he was "doing fine" in September 2003. He
> alleged chronic back pain in 2004, but reported to his
> treating physician that he "felt much better" on November 3,
> 2004. No further treatment was provided until the claimant
> reported a significant worsening of his back pain in August
> 2005. The record is devoid of any evidence showing a
> significant degree of muscle atrophy, paravertebral muscle
> spasm, sensory or motor loss, reflex abnormality, gait
> disturbance, or reduced range of motion of the spine or
> joints, an indication that claimant continues to move about
> on a fairly regular basis. Moreover, there is no diagnostic
> evidence of nerve root compression or spinal stenosis to
> substantiate the claimant's complaints of debilitating pain.
> In fact, no x-ray or other studies of the spine were deemed
> necessary before August 2005. . . .
>
> Claimant's self-reported activities of daily living are
> inconsistent with such allegations of totally debilitating
> symptomatology. The claimant reported his activities
> included working as an auto mechanic in his home garage, and
> maintaining his own household. While it has not been
> established that his work was substantial gainful activity,
> it does indicate a capacity to perform light work.

22

. . . The weight of the evidence shows that the claimant's
back pain was episodic until August 2005, and became chronic
on or about that time.

(Tr. at 19-20).

Reviewing the Polaski factors, I note that plaintiff worked
as a self-employed auto mechanic for several years without
reporting the income from that business. The medical records
during 2005 note that plaintiff's business was not doing well
(March 2005) and that he had been working on a car (August 2005).

As the ALJ noted, plaintiff's daily activities are
inconsistent with total disability. Plaintiff worked as an auto
mechanic, lived alone, and was able to take care of himself and
his household. Plaintiff's argument that his working as a
mechanic is irrelevant because it did not amount to substantial
gainful activity is not well founded. The ability to perform
work, although not at the substantial gainful activity level, is
relevant in determining a claimant's credibility. Harris v.
Barnhart, 356 F.3d 926, 930 (8th Cir. 2004).

The lack of frequent medical visits indicates that the
duration, frequency, and intensity of plaintiff's symptoms were
not as bad as alleged. During the year prior to plaintiff's
alleged onset date, he saw the doctor on September 24, 2003, and
then again on June 17, 2004. He alleges he became disabled on
September 6, 2004, but he did not seek medical attention between

23

June 17, 2004, and November 3, 2004 -- almost five months.  After
his November 3, 2004, appointment, he did not seek medical
attention again for the next four and a half months.  On March
28, 2005, he indicated his business was not doing well, and he
mentioned depression and lethargy for the first time.  He was
told to see a psychiatrist, but he failed to show up for his
psychiatric appointment the following month and never followed up
on that referral.  Plaintiff waited another five months before
seeking medical attention, and on that appointment (August 16,
2005) he reported back pain for the past two months.  This would
have been June 2005 when his back pain began, just before
plaintiff became disabled according to the ALJ.

Plaintiff testified that his medications cause dry mouth,
nervousness, and irritability.  However, there is no mention of
adverse side effects in the medical records.

No doctor ever placed any physical restrictions on plaintiff
prior to July 28, 2005.  In fact his treating physicians
routinely discussed the importance of exercise, including aerobic
exercise, with plaintiff (Tr. at 146, 152-157, 163-169, 295-300,
329, 332-333, 341-346, 352-358).

Plaintiff argues that the ALJ erroneously relied on
plaintiff's attempt at self employment because "[t]he record
shows . . . that this attempt at self-employed work ended in July

24

2004, well before the Plaintiff's amended onset date of September 6, 2004, making such activity moot at best." Contrary to plaintiff's argument, the medical records establish that he told his doctor that his business was not doing well in March 28, 2005, and on August 16, 2005, he hurt his back working on a car.

Plaintiff also argues that the ALJ should have relied more on the statements of third parties. The record includes very brief written statements by Stephen Wayne Souder and Tracy Metz, both dated December 2007 -- nearly two and a half years after the time period at issue here (Tr. at 133-134). Mr. Souder stated that he had known plaintiff for 15 years and that plaintiff tried to start a car repair business in 2000 but because of his back and knees and subsequent depression his business did not work. There is nothing in the letter indicating when -- from 2000 when plaintiff started his business until December 2007 when the letter was written -- plaintiff became unable to perform the car repair business due to his impairments. Therefore, this letter is of little relevance.

In addition, Ms. Metz testified at the hearing. In both her written and oral testimony, Ms. Metz pointed out that she had known plaintiff since approximately April 2007. Because she did not meet plaintiff until nearly two years after the time period at issue here, her testimony is irrelevant.

25

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff's symptoms were not as severe as alleged prior to July 28, 2005. Therefore, plaintiff's motion for summary judgment on this basis will be denied.

## VII. *RELIANCE ON FINDINGS OF DR. BALL*

Plaintiff argues that the ALJ erred in citing the opinion of Dr. Ball to support the ALJ's finding that plaintiff could do the full range of light work.

The ALJ's opinion on this issue reads as follows:

. . . The weight of the evidence shows that the claimant's back pain was episodic until August 2005, and became chronic on or about that time. Thus, a finding that the claimant was unable to perform light exertion before the date of onset found herein is not warranted.

In making this determination, the Administrative Law Judge notes that Dr. Ball completed a Medical Source Statement on December 7, 2007, limiting the claimant to no more than light work activity on a sustained basis. While Dr. Ball is not truly a "treating physician", the claimant testified that he has examined the claimant several times over the years for employment physicals and has some familiarity with his medical condition. Dr. Ball's opinion is given great weight, especially in determining the claimant's residual functional capacity in and after August 2005, when his medical condition worsened.

(Tr. at 20).

Although the ALJ's language in the above-quoted paragraph is less than clear, the ALJ found that Dr. Ball's opinion supported a finding that plaintiff could do light work or less after August

Case 6:08-cv-03329-REL   Document 17   Filed 09/29/09   Page 26 of 29

2005. Because plaintiff was found disabled once he became of advanced age, it makes no difference whether he could perform light work or even no work at all. Any finding that plaintiff could perform no more than light work results in a finding that plaintiff is disabled as of his 55th birthday.

The ALJ clearly gave great weight to the opinion of Dr. Ball as of the date of Dr. Ball's opinion. However, Dr. Ball's examination of plaintiff and opinion both occurred more than two years after the time period at issue here. Therefore, Dr. Ball's opinion is not relevant to whether plaintiff was disabled prior to July 28, 2005.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

On June 17, 2004, the last time plaintiff saw a doctor before his alleged onset date, he complained of back pain for the past couple of weeks. He was given two prescriptions, told to use heat, cold, distraction, relaxation, and massage therapy, and he was told to return in four to six weeks if his symptoms were not better. Plaintiff did not return to the doctor for another

27

four and a half months.  Therefore, it can be inferred that his symptoms did indeed improve during the time of his alleged onset date.  Even during his June 17 appointment, no functional restrictions were placed on plaintiff other than to "rest" his back with the anticipation that his symptoms would be resolved within four to six weeks.

On November 3, 2004 -- after plaintiff's alleged onset date -- plaintiff returned to the doctor and said he was feeling much better.  Plaintiff specifically said he had no pain, ranking his pain a zero out of 10.  Plaintiff was counseled on aerobic, flexibility, and endurance exercises and the importance of regular exercise.  A pain level of zero coupled with a recommendation that plaintiff regularly perform aerobic, flexibility, and endurance exercises does not support a finding that plaintiff was disabled.  Plaintiff had no further doctor appointments until several months after his last insured date.

Based on the above, I find that the substantial evidence in the record as a whole supports the ALJ's reliance on Dr. Ball's opinion for a time frame excluding the time period at issue here.  I further find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff was capable of performing the full range of light work at all times prior to his last insured date.

## VIII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's finding that plaintiff was not disabled prior to July 28, 2005. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.


_/s/ Robert E. Larsen_
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
September 29, 2009

29